IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-00674-MSK-KLM

BUSHMAN INVESTMENT PROPERTIES, LTD., a Utah limited partnership;
HOLMAN DBSI ARAPAHOE, LLC, a Utah limited liability company;
JOHN M. CLAYTOR, as Co-Executor of the Estate of William M. Claytor;
JOSEPH KLEM AND ANNA KLEM 2003 REVOCABLE TRUST, DATED 12-17-03;
CHARLEY A. SIMMONS;
SHIRLEY A. SIMMONS;
LINDA GRANA; and
WILLIAM J. MURPHY, JR.,

       Plaintiffs,

v.

DBSI E-470 EAST LLC, an Idaho limited liability company;
DOUGLAS L. SWENSON;
JEREMY SWENSON; and
DAVID SWENSON,

       Defendants.
_____

**OPINION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION**
_____

**THIS MATTER** comes before the Court pursuant to Defendant Douglas Swenson's Motion to Dismiss, or, in the Alternative, to Stay Pending Arbitration **(# 21)**, the Plaintiffs' response **(# 38)**, and Douglas Swenson's reply **(# 41)**, and Defendants' David Swenson and Jeremy Swenson's Motions to Dismiss, or, in the Alternative, to Stay Pending Arbitration **(# 35, 36)**, the Plaintiffs' response **(# 42)**, and David and Jeremy Swenson's reply **(# 43)**.

1

## FACTS

Although the Complaint (# 1) in this action is lengthy and complex, the facts relevant to this motion can be simply stated.

The Swensons, operating Defendant DBSI E-470 East LLC ("DBSI"), solicited the Plaintiffs to invest in a parcel of commercial real estate. The complex transaction envisioned by the Defendants included DBSI purchasing the property and then conveying it to the various investors as tenants in common. The solicitation was made through a Private Placement Memorandum, which made various representations about the investment opportunity. Each of the Plaintiffs tendered funds to be invested in the project, and on August 14, 2008, DBSI purchased the property.

The Plaintiffs now contend that many of the representations madein the Private Placement Memorandum, as well as oral representations made by each of the Swensons, regarding details of the investment were false or misleading. The Plaintiffs' contentions can be roughly organized into four categories:

• The Defendants represented to the Plaintiffs that the property would be free of encumbrances when it was conveyed to them. However, the Plaintiffs allege that the Defendants surreptitiously encumbered the property with a lien (in favor of another entity controlled by the Defendants) and a Deed of Trust before conveying it to the Plaintiffs.

• The Defendants represented, in the Private Placement Memorandum, that a portion of the Plaintiffs' investment would be set aside in a "reserve account" to pay property taxes, management fees, etc. The Plaintiffs contend that the reserve account was never established and/or never properly funded by the Defendants.

• The property was to be managed by a separate property manager, and the Defendants entered into (and the Plaintiffs later assumed) a Management Agreement to retain such a manager. (The Plaintiffs observe that the manager retained was yet another entity controlled by the Defendants.) The Plaintiffs allege that the property was not adequately maintained and managed as contemplated by the Management Agreement.

2

• The Private Placement Memorandum represented that property, when purchased by DBSI, was subject to a two-year purchase option held by another entity (another entity controlled by the Defendants). The option-holder was required, by an Option Agreement between it and DBSI, to make certain quarterly payments in order to retain the option, and the Private Placement Memorandum promised that those option payments would be credited against the Plaintiffs' investments. The Plaintiffs allege that DBSI has failed to collect and account for the sums payable under the Option Agreement, and further allege that the Defendants failed to disclose the fact that they knew the option-holder lacked the resources to make the required payments.

In this action, the Plaintiffs assert eighteen claims: (i) sale of unregistered securities in violation of 15 U.S.C. § 77e; (ii) securities fraud in violation of 15 U.S.C. § 77l, (iii) securities fraud in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5; (iv) breach of contract, under an unspecified jurisdiction's law,[1] relating both to the promise to convey the property free of liens and the promise to "coordinate the [Plaintiffs'] interests and manage the Property in a commercially reasonable manner"; (v) breach of fiduciary duty, relating to the failure to establish the reserve account with money retained from the Plaintiffs' investments; (vi) fraudulent misrepresentation, regarding the representation that the property would be free of liens when conveyed to the Plaintiffs; (vii) negligent misrepresentation, relating to both the failure to disclose the lien on the property and the failure to disclose the fact that the option-holder lacked the assets required to perform the terms of the Option Agreement; (viii) negligence, in that the Defendants failed to exercise reasonable care in various respects; (ix) false representation, relating to the Defendants' failure to establish and fund the reserve account; (x) common-law conspiracy, in that the Defendants jointly devised to defraud the Plaintiffs in several respects; (xi) a request for a declaratory judgment that "in the event of a sale of the

---

[1] None of the Plaintiffs' common-law claims specify which jurisdiction's law governs those claims.

Property, [DBSI]'s share, if any, of the proceeds from such sale will be applied first to discharge the Deed of Trust, and paying damages to Plaintiffs"; (xii) a request for an accounting; (xiii) conversion, in failing to fund the reserve account; (xiv) civil theft in violation of C.R.S. § 18-4-405; (xv) unjust enrichment, relating to the failure to establish the reserve account; (xvi) breach of warranty, in that the property conveyed to the Plaintiffs was not free of encumbrances; (xvii) a request for partition, or, more specifically, "an order making any agreement between Plaintiffs and Defendants regarding pre-conditions to a partition action be unenforceable, and an order permitting partition of the Property"; and (xviii) a request for appointment of a receiver pursuant to Fed. R. Civ. P. 66.

Each of the Swensons move **(# 21, 35, 36)** to dismiss or stay the Plaintiffs claims pending arbitration. They argue that the Purchase Agreement, signed by each Plaintiff,[2] requires that "any dispute, controversy, or other claim arising under, out of or relating to this Agreement or any of the transactions, contemplated hereby . . . shall be determined and settled by binding arbitration in Boise, Idaho in accordance with Idaho law."

The Plaintiffs respond that the arbitration provision does not apply to the claims in this action for several reasons: (i) the Plaintiffs' claims are based on fraudulent acts, not on any alleged violation of the terms of the Purchase Agreement, and thus, fall outside the agreement to arbitrate; (ii) there is an unreconcilable conflict in the choice-of-law provisions contained in the various agreements signed by the parties, and thus, Colorado law should apply to contract

---

[2]The Swensons are not, in their own names, parties to the Purchase Agreement. However, the Plaintiffs do not argue that DBSI, rather than the Swensons, is the proper party to invoke the arbitration agreement in the Purchase Agreement. Accordingly, the Court does not consider that issue.

interpretation and enforcement of this matter; (iii) the various agreements signed by the parties have inconsistent and conflicting provisions, and because the Purchase Agreement does not contain an integration clause (while the other agreements do), the Purchase Agreement does not reflect the final expression of the parties' agreement and the failure of subsequent agreements to include an arbitration clause indicates that the parties abandoned that portion of the Purchase Agreement via subsequent agreements; and (iv) the doctrine of merger extinguished all terms of the Purchase Agreement when the Defendants conveyed the warranty deeds pursuant to that agreement and the Purchase Agreement contains no language indicating an intention that the arbitration clause survives.

## ANALYSIS

### A. Standard of review

Before proceeding, it is important for the Court to clarify what matters it is and is not deciding in this case. The Defendants have requested dismissal of this action in favor of arbitration, or, in the alternative, a stay while such arbitration is conducted.

The request for dismissal is premature. Assuming this Court were to find that the claims are subject to arbitration, 9 U.S.C. § 3 directs that the Court stay this action while arbitration proceeds. The Defendants point to no authority that permits the Court to dismiss the claims in anticipation of the completion of arbitration. Thus, the only question the Court considers is whether a stay is appropriate in this case.

As to this issue, the Court's role is circumscribed. *Ansari v. Qwest Communications Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005), makes clear that "where the parties agreed to arbitrate in a particular forum, only a district court in that forum has authority to compel

arbitration."

Here, if there is an enforceable agreement to arbitrate, it calls for the arbitration to occur in Idaho. As a result, this Court cannot compel the parties to arbitrate; only a court in Idaho can.

Thus, in considering a stay of this action, this Court must speculate as to whether there is some probability that a court in Idaho would compel arbitration. If a court in Idaho might compel arbitration, a stay of this proceeding would serve concerns of efficiency and conservation of both the parties' and judicial resources. Conversely, if it is not likely that a court in Idaho would compel arbitration, this case should proceed. Accordingly, the Court will proceed to analyze and discuss this case as it would if it were asked to compel arbitration itself. In doing so, however, the Court does not intend to make any findings that preclude the courts of Idaho from considering the issue of arbitrability *de novo*.

**B. The claims here appear subject to arbitration**

Disputes regarding arbitration are governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* which reflects a strong public policy in favor of arbitration. *Gilmer v. Interstate/Johnson Lane Corp*. 500 U.S. 20, 25 (1991). 9 U.S.C. § 3 requires that a court stay an action pending the outcome of an arbitration proceeding if the issues involved are subject to an agreement to arbitrate. The existence and construction of an agreement to arbitrate merely present matters of contract interpretation for a court. *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997), *citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-45 (1995). A court must assure itself that the parties actually agreed to arbitrate a particular dispute, but, once that finding is made, doubts as to the scope of the agreement to arbitrate should be resolved in favor of arbitration. *Spahr v. Secco*, 330 F.3d 1266, 1267-70 (10th Cir. 2003).

Unless the parties' agreement provides otherwise , the question of whether the parties have agreed to submit this particular dispute to arbitration is a matter for judicial determination. *Spahr*, 330 F.3d at 1269. As with any contract, the parties' intentions control the interpretation of the terms of an agreement, but in the absence of any ambiguity, a court will give effect to the plain language of the agreement as embodying the parties' intent. *1mage Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1055 (10th Cir. 2006).

Here, the Court begins with the document containing the agreement to arbitrate - the Purchase Agreement. That agreement begins with a "Recitals" section that indicates that DBSI has purchased the real property and wishes to convey it to the buyers. The agreement notes that such property is subject to the Option Agreement, Tenants in Common Agreement, and Management Agreement, and that the latter two agreements shall be assigned to and assumed by the buyers. The subsequent portions of the agreement recited the terms of the sale, escrow provisions, certain conditions incident to closing, and several disclaimers and warranties of various types. Article 7 of the Purchase Agreement contains various "General Provisions," including Article 7.18, entitled "Arbitration of Disputes." That section reads:

> Any dispute, controversy, or other claim arising under, or of or relating to this Agreement or any of the transactions, contemplated hereby, or any amendment thereof, or the breach or interpretation hereof or thereof, shall be determined and settled by binding arbitration in Boise, Idaho in accordance with Idaho law. . . .

Thus, the Purchase Agreement unambiguously contains an agreement to arbitrate any dispute "arising under . . . or relating to" the Purchase Agreement, and any dispute "relating to . . . any of

the transactions contemplated . . . by" the Purchase Agreement.[3]  This gives rise to two questions: which transactions are "contemplated by" the Purchase Agreement, and whether any or all of the claims in the Complaint "arise under" or "relate to" the Purchase Agreement or "relate to any of the transactions contemplated by" that Agreement.

Turning to the question of what transactions the Purchase Agreement contemplates, the unambiguous language of that Agreement anticipates several transactions between the parties. Most obviously, the Agreement contemplates a sale/purchase of a specific fractional interest in the property, as set forth in Article 1 of the Agreement  – that is, an exchange of the Plaintiffs' money for a deed tendered by DBSI.  In addition, the Agreement contemplates another transaction relevant to the issues presented here: that "Buyer shall be assigned and shall assume" the Tenant in Common and Management Agreements.[4]  *Docket* # 1, Ex. A, ¶ C.  Similarly, a term of the Purchase Agreement is that the sale "is made pursuant to the Confidential Private

---

[3]The Plaintiffs point out that another portion of the Purchase Agreement contemplates an award of attorney's fees if "either party commences litigation for the judicial interpretation, enforcement, [etc.] against any party."  They argue that the reference to "litigation" renders the agreement to arbitrate ambiguous, at the very least.  The Court is unpersuaded by this argument. Acknowledging the possibility of a party commencing litigation in no way undermines the fact that the parties unambiguously agreed to arbitrate their disputes.  The clause making attorney's fees available if litigation is commenced would have vitality in, for example, circumstances such as this one, where a party commenced litigation in derogation of the agreement to arbitrate, in circumstances where the parties elected to waive the right to demand arbitration of a particular dispute, or in circumstances where judicial intervention is requested to enforce an arbitrator's decision.

[4]The final page of the Management Agreement is a signature page for persons who purchase interests in the property from DBSI.  It states simply that the buyer has purchased an interest in the property, and "pursuant to the [ ] Purchase Agreement . . . has assumed its share of the rights and obligations under [the Management Agreement]."  Thus, it is apparent that the assumption of the Management Agreement by the Plaintiffs was a transaction specifically contemplated by and performed by operation of the Purchase Agreement.

8

Placement Memorandum," which, the Plaintiffs allege, contains some of the false representations that underlie some of the claims herein. *Id.* at ¶ B. Although the reference to the sale occurring "pursuant to" the Private Placement Memorandum does not, of itself, describe a "transaction" between the parties, it incorporates the representations set forth in that Memorandum into the terms of the sale described in the Purchase Agreement.

With these various transactions in mind, it appears that all of the claims in the Complaint "relate to" transactions contemplated in the Purchase Agreement. In essence, all of the Plaintiffs' claims can be traced back to breaches of or misrepresentations made in two documents: the Private Placement Memorandum (which, among other things, promised the property would be conveyed without debt, that payments would be made by the option holder and credited against the Plaintiffs' purchase price, and that the reserve account would be maintained), and the Management Agreement (which contained representations about the management of the property). Because both of these documents are essential components of transactions referenced in the Purchase Agreement, it appears that all of the Plaintiffs' claims "relate to" transactions that incorporate these documents. This Court therefore finds that a court in Idaho could conclude that the language of the Purchase Agreement reflects an agreement by the parties to arbitrate all of the claims in the Complaint.

The Court then turns to the Plaintiffs' argument that the agreement was nullified or otherwise superseded. The Court begins with the Plaintiffs' argument that the doctrine of merger eliminated all terms in the Purchase Agreement that were not contained in the warranty deed issued by DBSI as at the consummation of the sale contemplated by the Agreement.

The doctrine of merger provides that a buyer's acceptance of a deed tendered in

performance of a contract operates to extinguish covenants in the contract that relate to title, quantity, possession, or emblements of the land; in essence, the contract's promises on these matters "merge" into the deed's representations with regard to those subjects. *Lazy Dog Ranch v. Telluray Ranch Corp.*, 923 P.2d 313, 318 (Colo. App. 1996). However, agreements in the contract that are do not relate to these subjects, which are not necessarily satisfied by the execution and delivery of the deed, are not merged and remain enforceable following delivery of the deed. *Id.*; *Coe v. Crady Davis Corp.*, 60 P.3d 794, 796 (Colo. App. 2002), *citing City of Westminster v. Skyline Vista Develop. Co.*, 431 P.2d 26 (Colo. 1967). Here, the arbitration agreement is not a covenant relating to the title, quantity, possession, or emblements of the property itself; it is, quite obviously, not an agreement that can be satisfied by execution and delivery of the deed. Thus, at least under Colorado law, it did not merge into the terms of the deed, but rather remains enforceable.

Next, the Plaintiffs argue that the Purchase Agreement lacks an integration clause and thus, cannot be said to be a final expression of the parties' intent; instead, they contend that the Management Agreement – which does contain an integration clause but does not contain an agreement to arbitrate – supersedes any arbitration agreement in the Purchase Agreement. Whatever merit there may be to this argument in the abstract, it appears to be based upon an inaccurate factual premise - contrary to the Plaintiffs' assertion, the Purchase Agreement contains an integration clause. Article 7.1 states "This Agreement, together with the other Transaction Documents, contain the entire agreement between the parties relating to the transactions contemplated hereby. . . ."

The Plaintiffs final argument is less clear. The Plaintiffs appear to argue that arbitration

10

is not appropriate because of apparent conflicts between terms in the Purchase Agreement – e.g. deeming the agreement to be governed by Idaho law – and terms in the Management Agreement – e.g. deeming it to be governed by Colorado law.  It is not clear to this Court how such a conflict implicates the agreement to arbitrate, nor that there is a conflict in the laws of each state that is of import.  Although application of differing laws may indeed pose challenges in substantive resolution of the parties' claims, that is so for the court or for an arbitrator.

Accordingly, the Court finds that an Idaho court could conclude that the language of the Purchase Agreement reflects an agreement between the parties to arbitrate all of the claims asserted in this action.  As a result, the Court will stay the action to provide the parties with the opportunity to do so.  However, as noted above, the Court lacks the authority to affirmatively compel the parties to arbitration in Idaho; the most it can do is temporarily stay this action while the Defendants obtain an order from the District Court in Idaho compelling the arbitration.

The stay imposed by this Court shall be a conditional one.  Within 45 days of the date of this Order, the Defendants shall commence an action in Idaho, seeking to compel the arbitration of the disputes asserted herein.  If the Defendants do so, the stay imposed by this Court shall remain in effect until the Idaho proceeding is concluded.  Otherwise, the Court will deem the Defendants to have waived the opportunity to compel arbitration of the claims herein and shall, upon motion by the Plaintiffs, lift the stay and allow this action to proceed.

## **CONCLUSION**

For the foregoing reasons, the Swanson Defendants' Motions to Dismiss or, in the alternative, to Stay Pending Arbitration (**# 21, 35, 36**) are **GRANTED IN PART** and **DENIED IN PART** as follows.  This action is **STAYED** for a period of 45 days, during which the

Defendants shall commence an action in Idaho, requesting that the Plaintiffs be compelled to arbitrate the claims in this case.  Upon the filing of such an action, notice shall be filed in this case and the stay shall remain in effect until the Idaho action is concluded.  If the Defendants do not commence the Idaho action, the Court will deem the Defendants to waive their request to compel arbitration and, upon motion by either party, the Court will lift the stay and allow this case to proceed.

Dated this 15th day of February, 2010

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge